UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR NOE ORTIZ GOMEZ,<br><br>    Plaintiff,<br><br>v.<br><br>MOISES BECERRA, et al.,<br><br>    Defendants. | Case No.  23-cv-03724-JCS<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 10 |

## I.  INTRODUCTION

Oscar Noe Ortiz Gomez is a noncitizen from El Salvador who is currently in Immigration and Customs Enforcement ("ICE") custody.  Although an Immigration Judge found Petitioner is likely to be tortured in El Salvador and granted him relief under the Convention Against Torture ("CAT") on March 14, 2023, ICE continues to incarcerate Petitioner while an appeal of the Immigration Judge's ("IJ") decision remains pending. He has been in civil detention for over twenty months without a custody hearing. Respondents are Moises Becerra, Field Office Director of ICE's San Francisco Field Office; Tae D. Johnson, Acting Director of ICE; Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); and Merrick B. Garland, the United States Attorney General.

On July 26, 2023, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he asks the Court to order Respondents to immediately release him from DHS's physical custody; or in the alternative, to provide him with a bond hearing within 48-hours, where Respondents must establish the necessity of further detention by clear and convincing evidence, evaluate Petitioner's ability to pay in setting a bond and consider alternative conditions of release that "reasonably assure the safety of the community and Petitioner's future appearances."  Dkt. no.

1 ("Petition") ¶ 4 & Prayer for Relief ¶¶ 4-5.

The parties filed a stipulated briefing schedule on Respondents' return and motion to dismiss ("Motion to Dismiss"), which the court entered on August 3, 2023. This matter is fully briefed and is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the reasons stated below, the Motion to Dismiss is DENIED. The Petition is GRANTED.[1]

## II.     BACKGROUND

### A.     Petitioner's Past

Petitioner was born in El Salvador in 1998. When he was five years old, he was sexually assaulted by a neighbor and until he was nine he was subjected to physical and psychological abuse by his father. Petition ¶¶ 23-25. Starting when he was 12 years old, Petitioner was forced to watch a member of a Mara Salvatrucha 13 ("MS-13") rape his sister multiple times. *Id.* ¶ 26. His sister bore a son as a result of the rapes. *Id.* The gang member eventually abducted Petitioner's sister and imprisoned her in an abandoned house until she escaped. *Id.* Members of MS-13 also tried to recruit Petitioner and beat him approximately weekly when he refused. *Id.*

When Petitioner was about 18 years old, he encountered the gang member who had raped and abducted his sister. After Petitioner refused his entreaties to help him "reconcile" with Petitioner's sister, "an 'extermination group' made up of about twenty armed Salvadoran police, military officers and [the gang member], stormed Petitioner's home around midnight, held Petitioner at gunpoint, and used a machete to brand the letter "K" into his chest. *Id.* ¶ 27. The men threatened to kill Petitioner if he did not leave the country and Petitioner fled the country within a week. *Id.* After Petitioner fled, "the extermination group interrogated family members who remained in El Salvador regarding Petitioner's whereabouts, beat them, and threatened to find and kill Petitioner." *Id.*

Petitioner entered the United States in February 2017, when he was 18 years old and was detained by ICE in Texas. *Id.* ¶ 28 & Ex. B (Form I-870, Credible Fear Worksheet, dated 03/27/17 ("Credible Fear Worksheet")); Ex. C (Form I-862, Notice to Appear, dated 03/27/17

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

("Notice to Appear")). After an asylum officer found Petitioner had a credible fear of persecution, DHS initiated removal proceedings against him. *Id.* ¶ 28 & Ex. B (Credible Fear Worksheet). On May 9, 2017, Petitioner submitted a pro se application for asylum, withholding of removal, and relief under the CAT. *Id.* ¶ 28 (citing Yamane Decl. ¶ 4). On May 11, 2017, Petitioner was released from custody on bond. *Id.* ¶ 28 & Ex. D (IJ Order, dated 05/09/17); Ex. E (Form I-830, Notice to EOIR: Alien Address, dated 05/11/17). He moved to Inglewood, California, and his case was transferred to the Immigration Court in Los Angeles, California. *Id*. ¶ 28 & Ex. F (IJ Order, dated 06/14/17).

Petitioner was later diagnosed with Post-Traumatic Stress Disorder, Major Depressive Disorder, Generalized Anxiety Disorder and Panic Disorder, which have been found to be directly associated with the severe trauma he suffered as a child and his fear of returning to El Salvador. *Id.* ¶ 40 (citing Dr. Perez Decl. ¶ 3). He has attempted suicide several times and experienced flashbacks of El Salvador. *Id.* ¶ 30 (citing Dr. Perez Decl. ¶ 20). He received no mental health treatment and turned to drugs and alcohol to numb his pain. *Id.* ¶ 30 (citing Petitioner Decl. ¶¶ 39-45). He was convicted of four misdemeanors and two felonies based on incidents that occurred in 2019 and 2020. *Id.* ¶¶ 31-33 (citing Yamane Decl. ¶¶ 6-7; Petitioner Decl. ¶¶ 42, 44) & Ex. G (Felony Abstract of Judgment, dated 03/01/21); Ex. H (Felony Abstract of Judgment, dated 03/01/21).

On December 2, 2021, Petitioner was released early from state prison for good conduct after serving about half of his sentence. *Id*. ¶ 35. ICE took custody of Petitioner directly from prison, finding that he was subject to "mandatory" detention under 8 U.S.C. § 1226(c). *Id*. Initially, ICE detained Petitioner at Golden State Annex ("GSA"), in McFarland, California. *Id*. It then transferred him to Mesa Verde ICE Processing Center ("Mesa Verde") in Bakersfield, California on January 4, 2022. *Id.* ¶ 36 & Ex. L (DHS Motion to Change Venue, dated January 14, 2022).

On March 8, 2022, Petitioner had an individual hearing on his application for asylum, withholding of removal, and relief under the Convention Against Torture. *Id.* ¶ 38 (citing Yamane Decl. ¶¶ 16-17). He proceeded pro se at that hearing. *Id.* ¶ 38 (citing Yamane Decl. ¶

3

16) & Ex. N (Decision of the BIA, dated 08/22/22 ("BIA Decision")). After hearing testimony, the Immigration Judge ("IJ") issued an oral decision finding that Petitioner was per se ineligible for asylum based on his criminal convictions and denying withholding of removal, protection under the CAT, and post-conclusion voluntary departure on the merits. *Id*. (citing Yamane Decl. ¶ 19). Petitioner timely appealed and obtained pro bono counsel for the appeal. *Id.* (citing Yamane Decl. ¶¶ 20-21) & Ex. M (Form EOIR-27, Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals, dated 05/26/2022).

On August 22, 2022, the BIA issued a decision sustaining Petitioner's appeal and remanding for a new hearing. *Id. ¶* 41 (citing BIA Decision; Yamane Decl. ¶ 25). On remand, the IJ held a series of hearings on Petitioner's case, *id.* ¶ 41, and on March 14, 2023, the IJ issued a written decision granting Petitioner deferral of removal under the CAT. *Id.* ¶ 46 & Ex. R (IJ Decision, dated 03/14/23). The IJ found that Petitioner suffered past torture and is more likely than not to be tortured if he is returned to El Salvador. *Id.* (citing 3/14/23 IJ Decision at 10-12; Yamane Decl. ¶ 36). The IJ denied Petitioner asylum and withholding of removal. *Id.* (citing IJ Decision at 5-8; Yamane Decl. ¶ 36).

On February 17, 2023, Petitioner submitted a formal letter to ICE, requesting that it release him on his own recognizance, bond, or under an electronic monitoring device program. *Id.* ¶ 45 (citing Yamane Decl. ¶ 35). ICE never responded to Petitioner's request. *Id.*

ICE interviewed Petitioner on March 23, 2023, and determined that he was eligible for release from custody on June 12, 2023. *Id.* ¶ 47 (citing Yamane Decl. ¶ 37) & Ex. S (Email from bkidetained@ice.dhs.gov, dated 03/23/23). However, on April 12, 2023, DHS filed an appeal of the IJ's CAT grant. *Id.* ¶ 48 & Ex. T (Form EOIR-26, Notice of Appeal from a Decision of the IJ, dated 04/10/23). On April 14, 2023, Petitioner filed a cross-appeal of the IJ's denial of withholding of removal. *Id.* ¶ 48 & Ex. U (Form EOIR-26, Notice of Appeal from a Decision of the IJ, dated 04/14/23). Both remain pending before the BIA.

On July 19, 2023, Petitioner filed a second request for release with ICE. *Id.* ¶ 50 (citing Yamane Decl. ¶ 43). The request included over one-hundred pages of evidence of his rehabilitation, and his reentry and mental health treatment plan. *Id*. On July 20, 2023, an ICE

1  Officer called Petitioner's immigration attorney and denied his request without any individualized
2  analysis of his evidence or case. *Id.*
3      Petitioner remains in custody at Mesa Verde. He has been detained by ICE for more than
4  20 months without any individualized determination of whether he is a flight risk or danger. *Id*. ¶
5  35.  His immigration case is expected to continue for months and possibly for more than a year.
6  *Id.* ¶ 48 (citing Yamane Decl. ¶ 42).

    **B.**    **Details of Petitioner's Confinement**

Mesa Verde, where Petitioner is confined, is a contract detention facility located in Bakersfield, California, which is in the Eastern District of California.  Motion to Dismiss at 3. It is owned and managed by The GEO Group, Inc. ("GEO").  Dkt. No. 10-3 (Gonzalez Decl.) ¶ 4. The warden, known as the Facility Administrator, is a GEO employee, whose office is based in Bakersfield. *Id.*

Nancy Gonzalez is DHS Acting Assistant Field Office Director with Enforcement and Removal Operations ("ERO"), in the San Francisco Field Office ("ERO San Francisco"), but is based in Bakersfield, California. *Id.* ¶ 1.  She is assigned to the Bakersfield Sub-Office within ERO San Francisco and is responsible for oversight of noncitizens detained at Mesa Verde. Gonzalez Decl. ¶ 1. Gonzalez states that she supports the ERO San Francisco Deputy Field Office Director and Field Office Director "in managing operations and procedures of enforcement and removal activity" throughout the Bakersfield area of responsibility, which includes "providing oversight and supervision of Supervisory Detention and Deportation Officers and their staff who maintain the docket management of ICE detainees at Mesa Verde." *Id*. According to Gonzalez, she and her staff "directly liaise with the Mesa Verde Facility Administrator and other GEO personnel regarding the detainees at Mesa Verde." *Id*. ¶ 5. Her direct line supervisor is Deputy Field Office Director ("DFOD") Orestes Cruz, who is based in Bakersfield. *Id*. ¶ 6. Cruz is responsible for ICE immigration enforcement operations within nine counties, including Kern County.  *Id.*

Cruz directly reports to Respondent Moises Becerra, Field Office Director ("FOD") of the "San Francisco Area of Responsibility," which encompasses offices in seven cities in California,

as well as Hawaii, Guam, and the Northern Mariana Islands. *Id*. ¶¶ 6, 7. According to Gonzalez, Becerra is responsible for the management and direction of all enforcement and removal operations and law enforcement operations within the boundaries of the San Francisco Area of Responsibility. *Id*. ¶ 7.

### C. Complaints About Intrusive Pat-Downs at Mesa Verde

According to Petitioner's attorney, in 2022 Petitioner and other detainees reported to her and to other immigration attorneys that the number of pat-downs being conducted at Mesa Verde had increased after detainees began engaging in a labor strike. Yamane Decl. ¶ 22. Further, "[s]everal individuals also reported that these pat-downs were becoming increasingly intrusive and sexually abusive, with some guards using rubbing rather than patting motions and excessively lingering on individuals' chests, inner thighs, waists, and buttocks." *Id.* ¶ 23.

Petitioner reports that he was subjected to several instances of intrusive pat-downs in 2022, which triggered "memories of the sexual abuse he suffered as a child, and led him to feel psychological and emotional distress." *Id.* ¶¶ 23-24. He filed a grievance as to one that occurred on October 19, 2022, and in response to another pat-down on October 22, 2022 he filed a complaint under the Prison Rape Elimination Act ("PREA") against the officer involved in the incident. *Id.* ¶ 27. That complaint was passed on to the Bakersfield Police Department, which sent two officers to interview Petitioner, but the officers did not speak Spanish. *Id.* ¶ 27. The complaint was subsequently marked "unfounded." *Id.* ¶ 33. According to Petitioner's counsel, since his complaint was rejected he "has felt increasing psychological and emotional distress as a result of the pat-downs[,] . . . skipp[ing] meals and yard time to avoid pat-downs and the past memories they trigger." *Id.*

On January 17, 2023, Petitioner and seven other detained individuals filed a complaint with the DHS Office of Civil Rights and Civil Liberties ("OCRCL") alleging a pattern of sexually abusive pat-downs and impunity for these actions at Mesa Verde. *Id.* ¶ 34. The OCRCL's investigation of these allegations is on-going. *Id.*

### D. The Habeas Petition

On July 26, 2023, Petitioner filed a petition for writ of habeas corpus. The Petition asserts

two claims for relief: 1) that Petitioner's prolonged detention without a hearing violates his right to substantive due process under the Fifth Amendment's Due Process Clause; and 2) that Petitioner's ongoing prolonged detention without an individualized hearing at which the government has established clear and convincing evidence of flight risk or danger violates his right to procedural due process under the Fifth Amendment's Due Process Clause. In his Petition, Petitioner asks the Court to order his immediate release from custody or provide a bond hearing within 48 hours of the Court's order.  He further asks the Court to "[e]njoin Respondents from causing Petitioner any greater harm during the pendency of this litigation and his immigration court case, such as by transferring him farther away from his legal Counsel or placing him into solitary confinement." Dkt. no. 1 (Petition), Prayer ¶ 6.

### III. JURISDICTION OVER THE PETITION

Respondents argue that this Court lacks jurisdiction over the Petition, relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), and Ninth Circuit cases citing it with approval in the immigration context, *see, e.g., Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020), which they contend require Petitioner to follow the "district-of-confinement" rule. Motion to Dismiss at 4-12. They acknowledge that "several courts in this District have recently ruled that they have jurisdiction over habeas petitions brought by individuals detained in the Eastern District because the regional ICE Field Office Director is located in this District"[2] but contend these decisions are neither

---

[2] In fact, this is an understatement. At least fourteen judges in this district have reached this conclusion. *See, e.g.*, *J.P. v. Garland*, No. 23-cv-00612-AMO, 2023 U.S. Dist. LEXIS 137192, at *5 (N.D. Cal. Aug. 7, 2023) (holding in immigration habeas case the director of the San Francisco Field Office was the proper respondent and therefore that there was jurisdiction in this district even though the petitioner was detained in the Eastern District); *Diaz v. Becerra*, No. 22-CV-09126-DMR, 2023 WL 3237421, at *3 (N.D. Cal. May 2, 2023) (same); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 U.S. Dist. LEXIS 56944, at *7-10 (N.D. Cal. Mar. 31, 2023) (same); *Salesh P. v. Kaiser*, No. 22-cv-03018-DMR, 2022 U.S. Dist. LEXIS 210104, at *12 (N.D. Cal. Nov. 18, 2022) (same); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *3 (N.D. Cal. June 14, 2022), appeal dismissed, No. 22-16205, 2022 WL 18587903 (9th Cir. Dec. 28, 2022) (same); *Ameen v. Jennings*, No. 22-CV-00140-WHO, 2022 WL 1157900, at *4 (N.D. Cal. Apr. 19, 2022) (same); *Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293, at *2 (N.D. Cal. Oct. 14, 2021) (same); *Perera v. Jennings*, No. 21-xc-04136-BLF, 2021 WL 2400981, at *2 (N.D. Cal. June 11, 2021) (same); *Domingo v. Barr*, No. 20-CV-06089-YGR, 2020 WL 5798238, at *2 (N.D. Cal. Sept. 29, 2020) (same); *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 2512410, at *3–4 (N.D. Cal. May 15, 2020) (Mesa Verde case) (same); *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 39 & 39 n.4 (N.D. Cal. 2020) (Chhabria, J.) (same); *Ortuno v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 2218965, at *2 (N.D. Cal. May 7, 2020) (same); *Doe v. Barr*, No.

7

binding nor correctly decided. *Id.* at 7. The undersigned agrees with all of the other judges in this District who have addressed the question and finds that the director of the San Francisco Field Office is a proper respondent and therefore that there is jurisdiction in this District even though Petitioner is detained in the Eastern District.

First, the Court rejects Respondents' assertion that under *Rumsfeld v. Padilla*, 542 U.S. 426, 443, 447 (2004) there is a bright-line rule that applies under the circumstances of this case establishing that jurisdiction is proper only in the district of confinement. In *Pham*, which involved a habeas immigration case brought by a petitioner who was in ICE detention at GSA – also in the Eastern District and run by Geo -- the court explained why this argument is incorrect:

> In *Padilla*, the Supreme Court addressed whether the Southern District of New York had jurisdiction over a habeas petition brought by an enemy combatant detained on a naval brig in South Carolina. 542 U.S. at 432. Padilla named as respondents the president, the secretary of defense, and the commander of the naval brig where Padilla was being held. *Id*. The Court held that "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." *Id*. at 435.[ ] Because "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions,' . . . jurisdiction over Padilla's habeas petition lies in the Southern District only if it has jurisdiction over" the commander of the naval brig where Padilla was being held, who "exercises day-to-day control over Padilla's physical custody." *Id*. at 439, 442 (quoting 28 U.S.C. § 2241(a)). Because the proper respondent was in South Carolina, the Southern District of New York did not have jurisdiction over Padilla's petition. *Id*. at 446.
>
> Critically, *Padilla* did not address the question, raised in this case, of which court has jurisdiction when the detainee is confined "in a facility run by an entity other than the federal government," *Saravia*, 280 F. Supp. 3d at 1185, and it is not at all clear that *Padilla* requires that the default district-of-confinement rule applies. The Ninth Circuit cases citing *Padilla* with approval in the immigration context also do not address this question. *See, e.g., Lopez-Marroquin v. Barr*, 955 F.3d 759, 759-60 (9th Cir. 2020) (three-paragraph opinion construing an emergency motion to remand as a habeas petition and transferring it to the Southern District of California under *Padilla*); *see also Ameen*, 2022 U.S. Dist. LEXIS 71843, 2022 WL 1157900, at *3 (addressing unreported Ninth Circuit cases citing *Padilla* in the

---

20-CV-02263-RMI, 2020 U.S. Dist. LEXIS 74650, 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020) (same); *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *5 (N.D. Cal. May 19, 2020) (same); *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *4 (N.D. Cal. Jan. 30, 2019) (same). It does not appear that any judge in this District has found Respondents' arguments on this issue persuasive.

> immigration context and concluding that "[n]one of those cases addresses why a particular jurisdiction was appropriate, much less a situation where the habeas petitioner is being held in a private facility operated under a government contract").[ ] Thus, there is no controlling authority on the jurisdictional question presented here.

*Pham v. Becerra,* 2023 U.S. Dist. LEXIS 56944, at *8.

In fact, as the *Pham* court recognized, determining who is the "warden" under *Padilla* where the petitioner is detained in a private detention facility located in the Eastern District is "not a straightforward 'district-of-confinement' question, unless the correct respondent is also located in the Eastern District." *Id.* Courts in this District have concluded that the person with primary authority over a petitioner detained by ICE at GEO's private detention centers in the Eastern District – GSA and Mesa Verde -- is the San Francisco Field Office Director ("FOD"), who is a proper respondent in an immigration habeas case challenging the petitioner's detention. *See, e.g., Henriquez v. Garland*, 2022 WL 2132919, at *4 (holding that petition was properly filed in this district because the Acting Field Director for the San Francisco Field Office of ICE, who was named as a respondent, was responsible for carrying out ICE's immigration detention operations at Mesa Verde and therefore was a proper respondent); *Ortuno v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 2218965, at *2 (N.D. Cal. May 7, 2020) (same); *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *4 (N.D. Cal. Jan. 30, 2019) (same).

Here, as in the many other cases in which this Court has addressed the question, there is no dispute that the San Francisco FOD is the person with primary authority over Petitioner's arrest and detention. *See* Gonzalez Decl. ¶ 7 ("In his capacity as FOD, FOD Becerra is responsible for, but not limited to, the management and direction of all ERO activities and law enforcement operations located within the geographic boundaries of the San Francisco Area of Responsibility ("AOR")" including Bakersfield). The record also reflects that the authority for Petitioner's arrest and detention lies with the San Francisco Field Office. *See* Declaration of Deportation Officer Byran Spurling ("Spurling Decl.") (dkt. no. 10-1) ¶ 15, 16, 19, 20 ("ERO San Francisco" lodged immigration detainer, arrested Petitioner, conducted *Fraihat* custody review and transferred Petitioner from GSA to Mesa Verde).

On the other hand, the evidence Respondents have presented as to the Deportation Officer

("DO"), Acting Assistant Field Office Director ("AFOD") Nancy Gonzalez and her immediate supervisor, Orestes Cruz, is insufficient to establish that any of these individuals can be considered Petitioner's "warden" under *Padilla*. In particular, none of these individuals has the authority to release Petitioner. The DO, for example, states that he works in the Intake Unit at Mesa Verde, which handles docket management for detainees at that facility. Spurling Decl. ¶ 2; *see also Pham,* 2023 U.S. Dist. LEXIS 56944, at *8 (rejecting argument that Gonzalez and Cruz are "wardens" under *Padilla* because "Becerra, and not Gonzalez or Cruz, exercises control over Pham's physical custody."). In addition, as to Gonzalez and Cruz, even if either was a "warden" under *Padilla*, both work for the San Francisco Field Office and thus "any habeas relief ordered by the Court would necessarily be directed to the San Francisco office, which is within the Northern District." *Meneses v. Jennings*, 2021 WL 4804293, at *2.

In sum, because Becerra, as San Francisco FOD, is a proper respondent, jurisdiction in this District is proper.

**IV.  MERITS OF THE PETITION**

  **A.  Legal Standards Governing Entitlement to a Bond Hearing**

The Immigration and Nationality Act ("INA") authorizes the civil immigration detention of individuals pending removal proceedings. Section 1226(a) is the general detention provision, authorizing ICE to detain a noncitizen "pending a decision on whether [he] is to be removed from the United States," while allowing the government to release on bond of at least $1,500 or on conditional parole. Section 1226(c) contains an exception to the general provision, making detention mandatory for noncitizens who are deportable for certain criminal convictions, without the opportunity for a bond hearing before an IJ. A noncitizen subject to mandatory detention under section 1226(c) can only be released for witness protection purposes and if the noncitizen "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

In *Demore v. Kim*, the Supreme Court held that § 1226(c) was constitutional on its face. 538 U.S. 510, 530 (2003); *but see id.* at 532-33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could

1  become necessary then to inquire whether the detention is not to facilitate deportation, or to

2  protect against risk of flight or dangerousness, but to incarcerate for other reasons."). However,

3  the Court in *Demore* did not foreclose as-applied challenges and since that case was decided, the

4  Supreme Court has explicitly declined to decide whether detention under § 1226(c) is

5  constitutional in particular circumstances. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018);

6  *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of [§ 1226(c)]

7  does not foreclose as-applied challenges").

8        In 2015, the Ninth Circuit issued a decision in its "decade-long examination of civil, *i.e.*

9  non-punitive and merely preventative, detention in the immigration context" in which it

10  considered the procedural protections available to noncitizens detained under 8 U.S.C. §§ 1225(b)

11  and 1226(c). *See Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *reversed*

12  *by Jennings v. Rodriguez*, 583 U.S. ––––, 138 S.Ct. 830, 200 (2018). *In Rodriguez III*, a certified

13  class of noncitizens challenged their prolonged detentions pursuant to 8 U.S.C. §§ 1225(b),

14  1226(a), 1226(c), and 1231(a) without the provision of individualized bond hearings. 804 F.3d at

15  1065. Following the entry of a preliminary injunction, which was affirmed on appeal, *see*

16  *Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), the district court granted

17  summary judgment to the class and entered a permanent injunction requiring the government to

18  provide a bond hearing to any class member subject to detention for more than six months. 804

19  F.3d at 1065. The district court also required the government to prove by clear and convincing

20  evidence that the detainee was a flight risk or a danger to the community in order to justify the

21  denial of bond. *Id*. at 1071. On appeal, the Ninth Circuit affirmed summary judgment and the

22  entry of the permanent injunction as to the section 1226(c), 1225(b), and 1226(a) subclasses,

23  applying the canon of constitutional avoidance and construing sections 1225(b) and 1226(c) as

24  imposing a six-month time limit on detention;  after the six-month time limit passed, the court

25  held, the government could continue detention only under the authority of section 1226(a). *Id*. at

26  1079, 1082.

27        In *Jennings*, the Supreme Court reversed *Rodriguez III*, concluding that the Ninth Circuit

28  had misapplied the canon of constitutional avoidance as to sections 1225(b), 1226(c), and 1226(a),

and finding that its interpretations of those provisions to be "implausible." 138 S.Ct. at 842. As relevant here, the Court rejected the argument that those provisions contain an implicit six-month limit on the length of detention, observing that "nothing in the statutory text imposes any limit on the length of detention" or "even hints that those provisions restrict detention after six months." *Id*. at 842, 843. The Court in *Jennings* only addressed statutory challenges to the INA's detention scheme, however, remanding the question of whether prolonged detention without an individualized bond hearing violates the due process clause of the Fifth Amendment. 138 S. Ct. at 851.

Upon remand, the Ninth Circuit stated its "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional" and remanded the issue to the district court to consider it in the first instance. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018).[3]

**B.     Discussion**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although Respondents rely on *Demore* in support of their assertion that Petitioner's detention is constitutional, that case provides little guidance because the Court found only that Section 1226(c) was constitutionally permissible as to detention for the "brief period necessary" to complete removal proceedings, which in that case was six months. 538 U.S. at 513, 530-531.  However, the Court's holding was premised on the fact that detention pending removal hearings has "a definite termination point" and its finding that at that time, detention pending removal typically "last[ed] roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id*. at 529-30.

Here, in contrast, Petitioner's detention pending removal has been over twenty months, that is, more than three times the length of the detention that was at issue in *Demore*. *See, e.g.,*

---

[3] As of the date of this Order, the *Rodriguez* case is ongoing.  The district court has not yet issued a decision on the merits as to the constitutional question.

*Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *4 (N.D. Cal. Jan. 25, 2019) (noting that "[i]n contrast to the situation at the time *Demore* was decided, case processing times today are considerably longer" and concluding that petitioner's detention for over one year without a bond hearing violated his due process rights). Moreover, it was not Petitioner who chose to appeal the IJ's CAT grant but the government.[4]

Still, "there remains 'a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional.'" *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020) (quoting *Gonzalez*, 2019 WL 330906, at *3). As there appears to be no controlling authority establishing a bright-line rule for a due process right to receive periodic bond hearings, the court finds that it is appropriate to conduct an individualized due process analysis under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). *See Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *8 (N.D. Cal. Nov. 18, 2022) (applying *Mathews* to decide whether detention of noncitizen under § 226(c) was

---

[4] Respondents suggest that the length of Petitioner's detention is constitutionally permissible because it is a result of his own "litigation decisions." Motion to Dismiss at 15-16. By this, they apparently mean that Petitioner has the choice to abandon his rights under the CAT and return to El Salvador, where the IJ has found he is likely to face torture. This is not a meaningful choice. As Judge Donato has observed in the face of a similar scenario where the government argued a noncitizen's detention could have been shortened if the detainee had only abandoned his asylum application, "it ill suits the United States to suggest that he could shorten his detention by giving up these rights." *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020); *see Romero Romero v. Wolf,* No. 20-CV-08031-TSH, 2021 WL 254435, at *4 (N.D. Cal. Jan. 26, 2021), appeal dismissed sub nom. *Romero Romero v. Garland*, No. 21-15565, 2021 WL 2660662 (9th Cir. June 8, 2021) (chastising the government for making the same argument as to petitioner's BIA appeal and observing, "Petitioner's BIA appeal (and his appeal to the Ninth Circuit, should he pursue it) is perfectly legitimate; if his removal becomes final, he loses the right to live in the country he's lived in since he was an infant (he's over 40 now), 'and it ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his [appeal].'") (quoting *Masood*, 2020 WL 95633, at *3). Moreover, while Respondents suggest that Petitioner could shorten his detention by going to some third country, *see* Motion to Dismiss at 20, there is no evidence in the record that there is another country that will accept Petitioner and Respondents do not dispute that it is highly unlikely one will be found. *See* Yamane Decl. ¶ 37 ("In my six years practicing as an immigration attorney in the San Francisco Bay Area, and representing numerous detained immigrants at Mesa Verde, I have personally observed that ICE has a practice of continuing to detain people at Mesa Verde for an additional ninety-day period after an IJ grants them CAT. During this ninety-day period, ICE allegedly investigates whether any third country, other than the country that the individual was granted relief from removal to, will accept them. In my personal experience, and the experience of my office, we have never once observed ICE find a third country that is ready to accept an immigrant during this ninety-day period.").

unconstitutional and collecting cases in which other courts have done the same).

In *Mathews*, the Supreme Court held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. at 333. The Court established a three-part test that requires courts to consider "(1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court." *Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018) (citing *Mathews*, 424 U.S. at 334-35).

The first factor is Petitioner's interest. Courts have held that there is a strong private interest based on the duration of the detention. *De Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (finding a strong private interest where the petitioner "risks continued detention absent a bond hearing"). "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez IV*, 909 F.3d at 256-57 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). In this case, Petitioner has been detained for nearly two years without a bond hearing, and there is no reasonably certain end to his detention. This period of detention leans heavily toward finding a strong private interest at stake. *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 776 (N.D. Cal. 2019) (finding a strong private interest where the petitioner had been detained 22 months and received his last bond hearing 16 months prior); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or unreasonable imprisonment" where he had been detained for one year without a bond hearing).

Petitioner's interest is even stronger in light of the evidence he has presented relating to his suicidality and PTSD, which are exacerbated by the prison-like setting and pat-downs to which he is subjected. *De Paz Sales v. Barr*, No. 19-CV-04148-KAW, 2019 WL 4751894, at *6 (N.D. Cal. Sept. 30, 2019) ("The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing.") (citation omitted).

The Court rejects Respondents' assertion that Petitioner's interest is diminished because a *Fraihat* hearing has already been held. *See* Motion to Dismiss at 18 (citing Spurling Decl.) ¶ 19

("On December 9, 2021, ERO San Francisco conducted a "*Fraihat*" custody review and determined that [Petitioner] would remain in detention due to being a threat to public safety.") *Fraihat* involved a due process challenge to the conditions of ICE detention of noncitizens in the early months of the COVID pandemic. *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709, 719 (C.D. Cal. 2020), order clarified, No. EDCV191546JGBSHKX, 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020), and rev'd and remanded, 16 F.4th 613 (9th Cir. 2021). *Fraihat* required ICE to conduct its own "custody determinations" by reviewing medical files to identify those with health risk factors and consider release for these individuals based on ICE's own "Docket Review Guidance." *See id. at 750*; *Fraihat v. ICE*, No. EDCV 19-1546 JGB (SHKx), 2020 WL 6541994, at *12 (C.D. Cal. Oct. 7, 2020). It did not provide for a neutral arbiter or for the submission of evidence by the detained noncitizen and there is no evidence in the record as to the type of review ICE conducted as to Petitioner's detention or suggesting that it constituted an individualized hearing sufficient to satisfy due process.

The second factor addresses the government's interest. Respondents argue that detention serves the government's interest in protecting the public from noncitizens who have been convicted of crimes by preventing them from skipping their hearings and remaining at large in the United States unlawfully while continuing to commit crimes. Motion to Dismiss at 21. However, the governmental interest at stake with respect to the instant habeas petition "is the ability to detain Petitioner *without providing him with* [*a*] *bond hearing*, not whether the government may continue to detain him." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (emphasis in original). Respondents do not explain how providing Petitioner with a bond hearing after 20 months of detention would undermine that interest. "After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight risk or danger to the community." *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020). The court concludes that "[r]equiring the government to provide [Petitioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk." *Perera v. Jennings*, , No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021).

The final factor looks at the value of additional safeguards. *See Soto*, 2018 WL 3619727, at *3. In this case, Petitioner has not received any bond hearing during his twenty-month detention. Accordingly, the value of additional procedural safeguards—*i.e.*, a bond hearing—is high, because "Respondents have provided virtually no procedural safeguards at all." *Jimenez*, 2020 WL 510347, at *3.

Based on its consideration of the *Mathews* factors, the Court concludes that Petitioner's continued detention without a bond hearing violates his due process rights under the Fifth Amendment.

The Court further finds that under *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), the government must justify Petitioner's continued detention by establishing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. *See Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 U.S. Dist. LEXIS 210104, *24 (Nov. 18, 2022) (holding that due process required bond hearing for petitioner detained under Section 1226(c) and that at the bond hearing the government was required to justify the petitioner's continued detention "by establishing by clear and convincing evidence that he is a flight risk or a danger to the community pursuant to *Singh v. Holder*, 638 F.3d at 1203."); *see also ., J.P.*, 2023 U.S. Dist. LEXIS 137192, at *13-14 (same); *Pham*, 2023 U.S. Dist. LEXIS 56944, at *7 (same). In *Singh*, the Ninth Circuit held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond," because "civil commitment for *any* purpose constitutes a significant deprivation of liberty." 638 F.3d at 1203-04 (emphasis in original) (citation omitted). That holding applies to Petitioner's prolonged detention in this case.[5]

---

[5] Respondents suggest that the Ninth Circuit's decision in *Rodriguez-Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) has called *Singh*'s holding on this point into question. Motion to Dismiss at 24-25. The undersigned, like all of the judges in this District who have addressed this argument, concludes that "the reasoning of *Singh* and its holding remains applicable to § 1226(c) cases, like this one, where there is a 'substantial liberty interest at stake[ ]' [because] *Rodriguez-Diaz* considered [only] whether a second bond hearing was constitutionally required in the § 1226(a) context, and specifically declined to opine on whether *Singh* remains good law in § 1226(c) cases." *Pham*, 2023 U.S. Dist. LEXIS 56944, *20-21 (citing *Singh*, 638 F.3d at 1204; *Perera*, 2021 U.S. Dist. LEXIS 110194, 2021 WL 2400981, at *6; *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 U.S. Dist. LEXIS 4312, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (holding that the government shall bear the burden in a constitutionally required bond hearing in the § 1226(c) context post-*Rodriguez-Diaz*)).

16

## V. CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 is GRANTED. Petitioner must be provided with a bond hearing before an immigration judge within 14 days of the date of this Order. At that hearing, DHS must establish by clear and convincing evidence that Petitioner is a flight risk or a danger to the community in order to continue his detention.

**IT IS SO ORDERED.**

Dated: September 25, 2023

JOSEPH C. SPERO
United States Magistrate Judge